48 P.3d 311 (2002)
146 Wash.2d 582
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Stephen T. CARMICK, Attorney at Law.
No. 11365-3.
Supreme Court of Washington, En Banc.
Argued February 12, 2002.
Decided June 20, 2002.
As Amended on Denial of Reconsideration July 30, 2002.
*313 Jonathan Burke, Seattle, for Petitioner/Appellant.
Kurt Bulmer, Seattle, for Appellee/Respondent. *312
*314 JOHNSON, J.
Attorney Stephen T. Carmick asks us to reverse the recommendation of the Washington State Bar Association Disciplinary Board (Disciplinary Board) to suspend him for 60 days from the practice of law for violations of the Rules of Professional Conduct (RPCs). The violations arose from Carmick's representation of a client in settlement negotiations concerning outstanding interest on a child support judgment. The Disciplinary Board found Carmick violated the RPCs by (1) misrepresenting an ex parte order to the superior court; (2) negotiating directly with an adverse party he knew, or should have known, was represented by counsel; and (3) omitting a material fact adverse to his client's position during negotiations with the represented party. We approve the Disciplinary Board's determination regarding the first two grounds of violation and impose a 60-day suspension.

FACTS
Carmick was admitted to the practice of law in Washington in 1980. During the events at issue, he was a sole practitioner in Lewis County. In July 1994, David Catron contacted Carmick. Catron wanted Carmick to represent him in a negotiation for interest on a past due child support judgment, entered against Catron under the Uniform Reciprocal Enforcement of Support Act (URESA). Catron wanted to settle the disputed interest for less than the amount calculated by the Lewis County prosecutor's office. Prosecutors Eugene Butler and Nelson Hunt had commenced the URESA action in 1985 on behalf of Barbara McCracken Alligood (McCracken),[1] a Florida resident. On October 15, 1985, an agreed order and judgment for support in the amount of $15,037.40 was entered in the URESA action. In October 1986, because the state of Florida had lost contact with McCracken, the superior court granted Butler's motion to dismiss the initial petition without prejudice. In September 1993, Catron's then attorney (not Carmick) negotiated with Butler and arranged a payment satisfying the face amount of the URESA judgment in exchange for a release of judgment lien without satisfaction of judgment. As this payment was for the face amount only, the interest on the URESA judgment remained outstanding. In April 1994, Butler located McCracken and sent her a letter advising that the face amount of the judgment had been paid and she could make a claim for interest.
In June 1994, Catron realized interest on the URESA judgment was still outstanding and contacted Butler to request a satisfaction of judgment so he could proceed with a loan to remodel his home. Butler discussed Catron's offer with McCracken. McCracken informed Butler she wanted the interest due her and authorized him to negotiate with Catron on her behalf. Butler calculated the outstanding interest at approximately $11,000, but Catron argued the amount should be lower. On July 12, 1994, Butler executed a release of judgment lien without satisfaction of judgment and the title company processing Catron's loan tendered the Lewis County Superior Court a check for $11,000.
Catron initially attempted to negotiate a lower interest amount directly with McCracken, but was unsuccessful. At this point, Catron hired Carmick to negotiate and settle the dispute for less than the amount held by the superior court. Carmick began his representation of Catron by reviewing the court file. Although virtually all of the pleadings in the URESA action referenced Butler, Carmick did not contact Butler. Instead, Carmick telephoned McCracken to discuss the terms under which she would agree to settle her claim. The content of the conversations between McCracken and Carmick is disputed, but both parties agree Carmick did not reveal to McCracken that $11,000 had been deposited with the superior court. Both parties also agree at some point during their conversations Carmick indicated neither Butler nor Hunt was available but did not tell McCracken she should not consult with them. Butler and Hunt later testified they were available for consultation at *315 the time. However, McCracken did not try to contact either Butler or Hunt.
On July 14, 1994, Carmick drafted and forwarded settlement papers to McCracken settling her claim for $5,000. Carmick's cover letter implied McCracken might have difficulty collecting the interest from Catron. The cover letter also directed McCracken to sign and return any other documents she had "received from the Lewis County Prosecuting Attorney's Office." Clerk's Papers at 13.
On July 25, 1994, Carmick filed the settlement papers McCracken had returned to him, signed and notarized. At approximately the same time, Carmick filed a notice of appearance, but did not serve the notice on Butler, Hunt, or McCracken. On August 2, 1994, Carmick presented an ex parte order to Lewis County Superior Court Judge David R. Draper, authorizing disbursement of $5,000 to McCracken and $6,000 to Catron. No notice of presentation of the order was given to Butler, Hunt, or McCracken. Carmick admits he told Judge Draper both Butler and McCracken were aware of the ex parte order and approved it. The superior court entered the ex parte order and funds were disbursed.
On September 7, 1994, although Butler's calculations indicated the correct total interest due was $12,381.14, he sent a letter to McCracken preparing to satisfy her claim by disbursing the $11,000 he believed was held still by the superior court. Butler discovered Carmick's activities and moved to vacate the ex parte order for disbursement based on fraud. Carmick withdrew from his representation of Catron. Butler and Catron's substitute counsel reached a settlement for an additional $1,000 payment to McCracken, which was finalized on December 30, 1994.
On January 19, 1995, Butler filed a grievance against Carmick. Based on its investigation, the Washington State Bar Association (WSBA) filed a complaint against Carmick for violations of the RPCs resulting from his representation of Catron. The WSBA alleged three counts of misconduct. Count I alleged Carmick violated RPC 4.1(a) and RPC 8.4(c) by misrepresenting through omission McCracken's ability to collect the interest due from Catron. Count II alleged Carmick violated RPC 3.3(f), RPC 3.4(c), RPC 3.5(b), RPC 4.1(a), and RPC 8.4(d) by making misrepresentations to the superior court in his motion for an ex parte order to disburse funds and by failing to serve notice on the parties of the ex parte motion and order. Count III alleged Carmick violated RPC 4.2 by contacting McCracken whom he knew, or should have known, was represented by counsel.
Carmick's disciplinary hearing began on June 28, 1999. On July 21, 1999, the hearing officer entered 19 findings of fact and 7 conclusions of law. In his conclusions of law, the hearing officer determined it was reasonable for Carmick not to have believed Butler represented McCracken, based on the practices in Lewis County at the time, and, as a matter of law under URESA, Butler did not represent McCracken. The hearing officer reasoned since no attorney-client relationship could exist between Butler and McCracken after the URESA petition was dismissed, Carmick could not violate RPC 4.2 by contacting McCracken directly. The hearing officer also concluded Carmick had made no material misrepresentations to McCracken. The hearing officer reached no conclusions of law as to Carmick's conduct in the ex parte proceeding before Judge Draper. The hearing officer dismissed the proceedings against Carmick and recommended no sanctions. The WSBA filed a motion for reconsideration, which was denied.
The WSBA appealed the decision to the WSBA Disciplinary Board. The Disciplinary Board adopted the hearing officer's 19 findings of fact and made 5 additional findings.
20. In a telephone conversation with Ms. McCracken, Ms. McCracken indicated she wanted to speak with Mr. Butler or Mr. Hunt. Respondent told Ms. McCracken that Mr. Butler was on vacation and Mr. Hunt was handling a murder trial. Neither statement was true.
21. On August 2, 1994, when Respondent present[ed] an ex parte order to disburse funds to Ms. McCracken, Respondent represented to the court that all parties were aware of the order. Yet, Respondent had not even provided notice *316 to the parties that the order was being presented.
22. Mr. Butler subsequently discovered the ex parte order while reviewing the court file related to the amount of outstanding interest due Ms. McCracken. Mr. Butler was also contacted by Ms. McCracken who advised him of her prior conversations with Respondent. Upon discovering Respondent's actions, Mr. Butler moved to vacate the ex parte order of disbursement.
23. Respondent withdrew from his representation of Mr. Catron. Mr. Butler reached a settlement with substitute counsel James Lawler. The settlement included a stipulation that the ex parte order of disbursement should be set aside. However, by that time Mr. Catron was essentially judgment proof.
24. In December 1994, Ms. McCracken settled her claim for interest for $6,000: the $5,000 disbursed pursuant to Respondent's ex parte August 2, 1994 order to disburse, and an additional $1,000 from Mr. Catron.
Clerk's Papers at 202-03.
The Disciplinary Board rejected the hearing officer's seven conclusions of law, finding they should more appropriately be characterized as findings of fact, and adopted four new conclusions of law.
1. Respondent violated RPC 4.1(a) and 3.3(f)[[2]] by misrepresenting information to Ms. McCracken in the process of representing Mr. Catron. Specifically, Respondent (a) misrepresented by omission to Ms. McCracken the availability of assets of Mr. Catron to satisfy the judgment both verbally and inferentially in his letter dated July 14, 1994 ((specifically, he failed to tell her there had been $11,000 deposited into the registry of the court for purposes of potential satisfaction of the judgment); and b) misrepresented to Ms. McCracken that attorneys were not available, either because they were in trial or on vacation, to assist Ms. McCracken.
2. Respondent violated RPC 3.5(b) and 8.4(d) by improperly obtaining an ex parte order without proper notice to the opposing party or attorney.
3. Respondent violated RPC 4.1(a) and 3.3(f) by misrepresenting to the court that all parties were aware that an ex parte order was being presented for entry.
4. Respondent violated RPC 4.2 by contacting Ms. McCracken whom he knew or should have known was represented by counsel. The [Disciplinary] Board is aware of evidence regarding local practice in the community regarding participation by the Prosecutor in certain proceedings. However, this local practice does not override an attorney's ethical obligations, absent any specific consent by the attorney on the other side of the matter. There is no evidence in the record of any such consent. In addition, the attorney client relationship and whether it exists is determined from the perspective of the client. In this case, Ms. McCracken clearly and reasonably believed that Mr. Butler was her attorney and acted in conformity with this belief. Good faith reliance on Mr. Catron's belief that Mr. Butler was a neutral party is not sufficient to overcome Respondent's ethical obligations.
Clerk's Papers at 204-05.
The Disciplinary Board found Carmick's misrepresentations to a third party and superior court and his violation of a court rule regulating ex parte contact required suspension, while Carmick's contact with an unrepresented party required reprimand. The Disciplinary Board concluded Carmick's mental state was negligent in some cases, but knowing or intentional in others. Finally, the Disciplinary Board determined McCracken had been actually harmed by the loss of $5,000 which would have been disbursed to her had the $11,000 check not been released *317 by the court, and potentially harmed by the loss of the $1,381.14 not held by the court.
The Disciplinary Board found seven aggravating factors and one mitigating factor. The aggravating factors were: (1) a prior disciplinary offense; (2) a dishonest motive; (3) multiple offenses (multiple violations of different RPCs); (4) a refusal to acknowledge the wrongful nature of the conduct; (5) a vulnerable victim; (6) a substantial experience in the practice of law; and (7) an indifference to making restitution. The only mitigating factor was a delay in the disciplinary proceedings. The Disciplinary Board, by a unanimous vote, recommended Carmick receive a 60-day suspension from the practice of law. This appeal followed pursuant to Rule 7.2 of the Rules of Lawyer Discipline (RLDs).

ANALYSIS
The Washington State Supreme Court exercises plenary authority in matters of attorney discipline. RLD 2.1. Under the provisions of the RLDs, we have delegated specific fact-finding and disciplinary responsibilities to the WSBA. A hearing officer makes initial recommendations to the Disciplinary Board as to findings of fact and conclusions of law. RLD 4.13(b). Although the hearing officer's findings are not conclusive, they are entitled to considerable weight, "particularly when the credibility and veracity of witnesses are at issue." In re Disciplinary Proceeding Against McMullen, 127 Wash.2d 150, 162, 896 P.2d 1281 (1995). The Disciplinary Board is free to adopt, modify, or reverse findings, conclusions, or recommendations of the hearing officer. RLD 6.7(e). Unchallenged findings of fact made by the hearing officer and affirmed by the Disciplinary Board will be accepted as verities on appeal. In re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 759, 801 P.2d 962 (1990). We will not disturb the Disciplinary Board's findings of fact if they are supported by a clear preponderance of the evidence. RLD 4.11(b); McMullen, 127 Wash.2d at 161-62, 896 P.2d 1281. A clear preponderance is a standard of proof between the simple preponderance required in a civil suit and the reasonable doubt standard required in a criminal action. In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 486, 998 P.2d 833 (2000).
The factual basis of Carmick's RPC violations can be grouped into three situations: (1) misrepresentations during the ex parte proceeding before Judge Draper; (2) improper negotiations with McCracken; and (3) omissions during negotiations with McCracken. On appeal, Carmick challenges both the Disciplinary Board's findings of fact and its conclusions of law in these areas. Carmick challenges the Disciplinary Board's additional findings of fact 20, 21, and 23 in their entirety, or in part, as unsupported by a clear preponderance of the evidence. Carmick argues each conclusion of law following from these facts is unsupported and, therefore, erroneous and urges us to adopt the hearing officer's recommendation and dismiss all charges against him. The WSBA supports the Disciplinary Board's factual findings and legal conclusions and urges us to consider that, under these facts, a 60-day suspension is lenient.
A. Ex Parte Proceeding
We first address Carmick's conduct during the ex parte proceeding, as we find this conduct the most serious of the violations before us and the violation best supported by the record. While we consider all alleged violations of the RPCs with great seriousness, we view misrepresentations to the court in ex parte proceedings with particular disfavor. The duty of candor in an ex parte proceeding directly influences the administration of justice. We cannot, and will not, tolerate any deviation from the strictest adherence to this duty.[3] In the simplest terms, an attorney in an ex parte proceeding who knowingly misrepresents to a judge the ex parte order is known to the opposing party and approved by that party shall be subject to discipline.[4]
*318 In an ex parte proceeding, an attorney is required to inform the tribunal of all relevant facts known to the attorney that should be disclosed to permit the tribunal to make an informed decision, whether or not the facts are adverse. RPC 3.3(f). An attorney shall not communicate ex parte with a judge except as permitted by law. RPC 3.5(b). These rules are designed to protect the integrity of the legal system and the ability of courts to function as courts. An attorney's duty of candor is at its highest when opposing counsel is not present to disclose contrary facts or expose deficiencies in legal argument. Such a high level of candor is necessary to prevent judges from making decisions that differ from those they would reach in an adversarial proceeding. Geoffrey C. Hazard, Jr. & W. William Hodes, The Law of Lawyering: Handbook on the Model Rules of Professional Conduct § 29.2, at 29-3, 29-4 (3d ed.2001).
Although the comments to the Model Rules of Professional Conduct have not been adopted in Washington, the commentary may be "instructive in exploring the underlying policy of the rules." State v. Hunsaker, 74 Wash.App. 38, 46, 873 P.2d 540 (1994). In an ex parte proceeding, an attorney making an assertion purported to be on the attorney's own knowledge, such as a statement in open court, may properly make the assertion only when the attorney knows it to be true or has made a reasonably diligent inquiry. Model Rules of Prof'l Conduct (Model Rules) R. 3.3 cmt. 3 (2001).
Carmick contends there is no evidence to support the Disciplinary Board's conclusion he violated either RPC 3.3(f) or RPC 3.5(b). Carmick argues the Disciplinary Board's conclusion regarding RPC 3.3(f) was unsubstantiated because the testimony regarding the ex parte discussion was not extensive. Carmick contends further he did not violate RPC 3.5(b) because he was operating with McCracken's knowledge, which was sufficient notice. Despite Carmick's arguments to the contrary, finding of fact 21 is supported by a clear preponderance of the evidence.
Although Judge Draper testified he did not recall the specific circumstances of the ex parte order, Carmick admitted he told Judge Draper the parties were aware of the order and "Butler had previously okayed my dealing directly with [McCracken]." Tr. of Proceeding at 79 (June 29, 1999). The record establishes these representations were incorrect. McCracken was unaware that any moneys were being held by the superior court. Butler had never spoken with Carmick and had never given Carmick express authorization to deal directly with McCracken. In short, Carmick's own testimony provides a sufficient quantum of evidence that he had not informed McCracken or Butler he would appear before Judge Draper to request an ex parte order to disburse funds.
This ex parte order would not have been granted without Carmick's misrepresentations to Judge Draper. We hold this is a violation of Carmick's duty to the court during an ex parte proceeding. We affirm the Disciplinary Board's conclusions of law 2 and 3 in that Carmick violated RPC 3.3(f) and RPC 3.5(b).
The Disciplinary Board also concluded Carmick's conduct during the ex parte proceeding violated RPC 4.1(a) (false statement of material fact) and RPC 8.4(d) (conduct prejudicial to the administration of justice). We do not affirm these conclusions. RPC 4.1(a) applies to out-of-court statements made to third parties. See Hazard & Hodes, supra, at 37-35. Carmick's statements were in-court statements made to the trial judge. RPC 4.1(a) does not apply to an ex parte proceeding. Similarly, the conduct prohibited by RPC 8.4(d) is more often associated with physical interference in the administration of justice or the violation of practice norms. In Re Disciplinary Proceeding Against Curran, 115 Wash.2d 747, 801 P.2d 962 (1990). RPC 3.5(b) protects against impropriety in obtaining an ex parte order. *319 Application of RPC 8.4(d) in this case would be redundant. We reverse the Disciplinary Board's conclusions of law 2 and 3 regarding Carmick's violation of RPC 4.1(a) and RPC 8.4(d).
B. Contacting a Represented Party
The Rules of Professional Conduct provide that in representing a client, an attorney shall not communicate about the subject of the representation with a party the attorney knows to be represented by another attorney in the matter, unless the attorney has the consent of the party's attorney. RPC 4.2. The rule's purpose is to prevent situations in which a represented party is taken advantage of by adverse counsel. Wright v. Group Health Hosp., 103 Wash.2d 192, 197, 691 P.2d 564 (1984). An attorney cannot evade the requirement of obtaining consent by disregarding the obvious. Model Rules R. 4.2 cmt. 5. We have held previously the existence of an attorney-client relationship turns largely on the client's belief it exists. Bohn v. Cody, 119 Wash.2d 357, 363, 832 P.2d 71 (1992); In re Disciplinary Proceeding Against McGlothlen, 99 Wash.2d 515, 522, 663 P.2d 1330 (1983).
Relying on the phrase, "represented by counsel," Carmick argues as a matter of law Butler could not represent McCracken after the URESA petition was dismissed in 1986 and, therefore, it was impossible for Carmick's contact to violate RPC 4.2. The WSBA argues the Disciplinary Board correctly determined Butler's statutory authority under URESA was not determinative regarding Carmick's violation of RPC 4.2 and, had it been, Butler did represent McCracken under URESA. Carmick's first argument fails because as Butler's signature on the release of judgment lien without satisfaction of judgment demonstrates, Butler represented McCracken in her negotiations with Catron.
An experienced attorney, such as Carmick, should have known Butler represented McCracken. Both the court record and Carmick's conversations with McCracken indicated Butler's extensive involvement in the URESA claim. The court record, which Carmick reviewed, showed Butler filed virtually every pleading on McCracken's behalf over a period of several years. In addition, Carmick admits McCracken asked him if she should consult with Butler during their telephone conversation. The record establishes McCracken informed Carmick she was represented by Butler, and RPC 4.2 requires Carmick to determine whether Butler did represent her.
Carmick next contends that due to the custom in Lewis County at the time, he reasonably believed he could engage in direct negotiation with McCracken. The WSBA argues that while parties are authorized to deal directly with one another, that authorization would not apply to an attorney, and Carmick's reliance on a local custom or Catron's authorization to negotiate directly with McCracken was misplaced.
An attorney should know that approved contact between the parties to a dispute does not authorize an attorney to contact a represented party, nor does local custom supersede the RPCs. The RPCs may not be waived by local custom. Where there is a reasonable basis for an attorney to believe a party may be represented, the attorney's duty is to determine whether the party is in fact represented. We find Carmick violated this duty because he should have known Butler represented McCracken. We affirm the Disciplinary Board conclusion of law 4 that Carmick violated his duty under RPC 4.2.
C. Misrepresentation by Omission
The Disciplinary Board found Carmick's conversations with McCracken also violated RPC 4.1(a) and RPC 8.4(c). In the course of representing a client, an attorney shall not knowingly make a false statement of material fact or law to a third person. RPC 4.1(a). It is professional misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. RPC 8.4(c).
The purpose of these rules is to prevent attorneys from actively engaging in misleading conduct. The plain language of RPC 4.1(a) incorporates three elements: (1) an affirmative act; (2) regarding a material fact; (3) knowingly made. Regarding RPC 8.4(c), we have made clear the importance of this provision. "`Simply put, the question is whether the attorney lied. No ethical duty could be plainer.'" In re Disciplinary Proceeding Against Boelter, 139 Wash.2d 81, 99, 985 P.2d 328 (1999) (quoting In re Disciplinary *320 Proceeding Against Dann, 136 Wash.2d 67, 77, 960 P.2d 416 (1998) (RPC 8.4(c) was violated by attorney trying to blackmail client during fee dispute with false affidavit)).
Generally, an omission regarding the amount available for settlement does not violate either RPC 4.1(a) or RPC 8.4(c). "A lawyer ... has no affirmative duty to inform an opposing party of relevant facts." Model Rules R. 4.1 cmt. 1. While a misrepresentation can occur by a failure to act, under generally accepted conventions in negotiations "a party's intentions as to an acceptable settlement of a claim" are not taken as statements of material fact. Model Rules R. 4.1 cmt. 2.
The Disciplinary Board found Carmick violated RPC 4.1(a) and RPC 8.4(c) "by omission" when he did not disclose that $11,000 had been "deposited into the registry of the court for purposes of potential satisfaction of the judgment." Clerk's Papers at 204. Carmick disputes this conclusion, asserting RPC 4.1(a) cannot be violated by omission. The Disciplinary Board also found Carmick misrepresented whether Butler or Hunt was available to discuss the settlement with McCracken. Carmick argues he negligently indicated Butler and Hunt were not available.
We do not decide whether it is possible for an attorney to violate these rules by omission because the harm in this case is precisely the harm that RPC 4.2 is intended to prevent. RPC 4.2, as discussed above, protects a represented party during negotiations with an adverse attorney. Here, had Carmick dealt with Butler, as he should have, his omission would have had no adverse impact. We conclude in this case RPC 4.1(a) and RPC 8.4(c) should not be expanded to achieve the same result.
We find the Disciplinary Board's conclusion regarding Carmick's representation of Butler's or Hunt's schedule fails for the same reason. Although neither side argues whether this representation was material, it was not. Material facts are generally those facts upon which the outcome of the litigation depends in whole or in part. Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 803, 23 P.3d 477 (2001) (considering materiality of fact under CR 56(c)). The record establishes McCracken was under no immediate pressure during her conversation with Carmick to consult with Butler or Hunt and she made no effort to do so. Carmick merely relayed his understanding of their schedules; he did not attempt to deter McCracken from contacting them. This representation became material only because Carmick negotiated directly with McCracken rather than with her attorney. This violation is better resolved under RPC 4.2. We reverse the Disciplinary Board's conclusion of law 1 without deciding whether RPC 4.1(a) or RPC 8.4(c) may be violated by omission.
In conclusion, we hold Carmick violated RPC 3.3(f) and RPC 3.5(c) in his ex parte conduct before a tribunal by misrepresenting to the trial judge that all parties were aware of the requested ex parte order and had approved it. We also hold Carmick violated RPC 4.2 by contacting a party he should have known was represented by counsel. For the reasons discussed above, we hold Carmick did not violate RPC 4.1(a) or RPC 8.4(c) and his presentation of the ex parte order did not violate RPC 4.1(a) or RPC 8.4(d).
D. Calculation of Sanction
Upon finding an attorney has committed an act of misconduct, we next determine the appropriate, sanction to impose. The potential sanctions are disbarment, suspension, reprimand, censure, or admonition. RLD 5.1. In making sanction determinations, we rely upon the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 ed. & Feb. 1992 Supp.) (ABA Standards) for guidance. Under the ABA Standards, we engage in a two-step process. First, we determine a presumptive sanction based on (1) the ethical duty violated, (2) the attorney's mental state, and (3) the extent of the actual or potential harm caused by the misconduct. Second, we consider aggravating or mitigating factors, which may alter the presumptive sanction. In re Disciplinary Proceeding Against Anschell, 141 Wash.2d 593, 608, 9 P.3d 193 (2000).
*321 In this case, the hearing officer recommended no sanction but the Disciplinary Board recommended a 60-day suspension. We give greater weight to the Disciplinary Board's conclusions of law regarding the recommended sanction than those of the hearing officer's since the Disciplinary Board is "`the only body to hear the full range of disciplinary matters'" and has a "`unique experience and perspective in the administration of sanctions.'" Dann, 136 Wash.2d at 84, 960 P.2d 416 (quoting In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 94, 667 P.2d 608 (1983)).
We are disinclined to depart from the Disciplinary Board's recommendations but are not bound by them either, as we retain the ultimate authority to determine the appropriate sanction for an attorney's misconduct. In re Disciplinary Proceeding Against Haskell, 136 Wash.2d 300, 317, 962 P.2d 813 (1998). We will adopt the Disciplinary Board's recommended sanction unless we articulate a specific reason to depart from its recommendation and are persuaded the sanction is inappropriate by one or more of the following factors: (1) the purposes of attorney discipline (sanction must protect the public and deter other attorneys from similar misconduct); (2) the proportionality of the sanction to the misconduct (sanction must not depart significantly from sanctions imposed in similar cases); (3) the effect of the sanction on the attorney (sanction must not be clearly excessive); (4) the record developed by the hearing panel (sanction must be fairly supported by the record and must not be based upon considerations not supported by the record); and (5) the extent of agreement among the members of the Disciplinary Board (sanction supported by unanimous recommendation will not be rejected in the absence of clear reasons). Anschell, 141 Wash.2d at 607, 9 P.3d 193.
The ethical duties violated by improper ex parte contact and by misrepresentations to a tribunal are violations of duties owed to the legal system. ABA Standards 6.1; 6.3; commentary at 40-42. Having determined which rules have been violated, we turn to Carmick's mental state.
An attorney's mental state may be one of intent, knowledge, or negligence. ABA Standards at 7. The ABA Standards defines intent as "the conscious objective or purpose to accomplish a particular result." ABA Standards, Definitions at 7. Knowledge is defined as "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards, Definitions at 7. In contrast, an attorney's actions are negligent when the attorney deviates from the standard of care of a reasonable attorney in the situation by failing "to heed a substantial risk that circumstances exist or that a result will follow" from that failure. ABA Standards, Definitions at 7.
Carmick argues in all cases his mental state was negligent. The WSBA, contending Carmick's actions were intended to further a scheme to defraud McCracken of $6,000, asserts Carmick's actions were knowing or intentional. The Disciplinary Board found in committing these violations Carmick was knowing or negligent.
We conclude Carmick's misrepresentation that McCracken and Butler knew of the ex parte order was knowing since Carmick knew as he made the statement he had not sent either of them notice before his appearance. Similarly, when Carmick assured the superior court Butler had authorized Carmick's contact directly with McCracken, he knew he had not consulted with Butler at any time during the proceedings. The record does not demonstrate, however, that Carmick intended to deceive the court. We find Carmick's representations to the superior court and his violation of a court rule were knowing violations.
Having determined the attorney's mental state, we conclude our determination of the presumptive sanction for these violations by examining the extent of the injury involved. The Disciplinary Board concluded McCracken had been actually harmed by the loss of $5,000. This conclusion was founded upon two assumptions: (1) McCracken would have received $11,000 but for her discussion with Carmick; and (2) Catron was essentially judgment proof. The WSBA argues *322 McCracken was actually harmed by the loss of $5,000 and potentially harmed by approximately $1,000 more. Carmick responds that McCracken had no assurance she would receive any more than the $6,000 for which she settled the claim. Furthermore, Carmick argues McCracken could have attempted to recover the full amount of the interest, rather than settling for the additional $1,000 payment.
Neither the assumption McCracken would have received $11,000 nor the assumption Catron was judgment proof is supported by the record. The WSBA has not proved McCracken would have received the full $11,000 held on deposit with the superior court. Butler's calculation of the interest due McCracken was never questioned because McCracken agreed to settle her claim for less than the calculated amount. Had Butler's calculation been disputed, there is no evidence it would have been proved as the correct amount.
Similarly, the record does not support the conclusion that Catron was judgment proof. A review of the record demonstrates Catron had assets sufficient to secure a loan. Presumably, the assets could have been attached and been sufficient to pay the remainder of the outstanding interest. However, other than the additional $1,000 payment secured by Butler, no further attempt was made to recover moneys from Catron. A clear preponderance of the evidence does not support the Disciplinary Board's conclusion that McCracken was actually harmed by the loss of $5,000. We find McCracken was potentially harmed but the exact extent of that harm cannot be known with any certainty.
Suspension is generally appropriate when a lawyer knowingly withholds material information from a tribunal or improperly violates a court rule and potentially harms a party to the proceeding. ABA Standards 6.12, 6.32. We have previously held a violation of RPC 3.3(f) warranted a 60-day suspension. See In re Disciplinary Proceeding Against Johnson, 118 Wash.2d 693, 707, 826 P.2d 186 (1992). Before we determine whether this is the appropriate sanction, we consider the presumptive sanction for Carmick's improper contact with a represented party.
The ethical duty violated by improper contact with a represented party is a violation of the duty owed to the legal system. ABA Standards 6.3 and commentary at 42-43. Based upon the standards for an attorney's mental state, discussed above, Carmick's contact with McCracken may have been either knowing or negligent because Butler's representation was obvious and extensive. However, Carmick could have wrongly believed that either Butler was incapable of representing McCracken as a matter of law or that local custom allowed Carmick to contact a represented party. We stress neither of these beliefs was, or could be, correct. However, we recognize Carmick may have mistakenly believed he could contact McCracken directly. We conclude Carmick's mental state was negligent.
When an attorney negligently contacts a represented party, potentially harming them, the presumptive sanction is reprimand. Because Carmick's violations of his duties during the ex parte proceeding carry the more severe penalty of suspension, the reprimand for negligently contacting McCracken will be included with the sanction for improper ex parte conduct.
The final step in determining the appropriate sanction to impose depends upon the presence or absence of aggravating or mitigating factors. The Disciplinary Board found seven aggravating factors and one mitigating factor. The aggravating factors were: (1) a prior disciplinary offense; (2) a dishonest motive; (3) multiple offenses (multiple violations of different RPCs); (4) a refusal to acknowledge the wrongful nature of the conduct; (5) a vulnerable victim; (6) a substantial experience in the practice of law; and (7) an indifference to making restitution. The only mitigating factor was a delay in the disciplinary proceedings.
Despite the WSBA's argument that the record supports each aggravating factor, we conclude only three apply. Carmick has a prior disciplinary offense; in 1992, two years prior to these events, Carmick was found in violation of RPC 1.6 (duty of confidentiality). Carmick has violated two provisions of the *323 RPCs in this matter. Carmick has conceded he has substantial legal experience.
The remaining four aggravating factors are not supported by a clear preponderance of the evidence. The Disciplinary Board found Carmick had a dishonest motive because it viewed all of Carmick's actions as furthering a single scheme to defraud McCracken. As a whole, the record does not support this conclusion. To find such a scheme, one must assume Carmick willingly attempted to cheat McCracken in a case that would not profit him personally, within a small legal community where he was certain to be caught. The record does not demonstrate Carmick had such a motive.
The Disciplinary Board also found Carmick refused to acknowledge the wrongful nature of his conduct and was indifferent to making restitution. We disagree. Carmick prevailed at his first hearing when the hearing officer found no sanction was appropriate. We cannot fault Carmick for taking the position during his Disciplinary Board hearing that the hearing officer was correct. Nor do we find, as discussed above, the argument that Catron was essentially judgment proof persuasive. The Disciplinary Board's conclusion that Carmick was indifferent to making restitution is not supported by the record. These aggravating factors are not present.
Finally, the Disciplinary Board decided without explanation that McCracken was a vulnerable victim. The record does not indicate McCracken was under any physical or mental disability, or was otherwise vulnerable during her interaction with Carmick. Although the WSBA characterizes her as unsophisticated and trusting, it presents no support for this assertion. This is not an appropriate aggravating factor.
The Disciplinary Board found the only mitigating factor present was the delay in bringing the disciplinary proceeding. We agree a delay in the timing of the disciplinary hearing may be a mitigating factor but the record does not indicate Carmick was harmed by the delay. We conclude the effect of the delay in this instance was very slight.
Carmick argues additional mitigating factors should apply because his prior reprimand was remote in time, he has rehabilitated in the interim, and his actions in this case were not dishonest. However, Carmick's prior violation occurred just two years before these events, Carmick offers nothing to demonstrate his rehabilitation beyond the absence of further complaints, and the honesty of Carmick's actions toward McCracken is debatable. These mitigating factors are not supported by the record.
In summary, we hold the aggravating factors are not as severe or as numerous as found by the Disciplinary Board. We also find one mitigating factor, but consider its value slight. We find the three aggravating factors are (1) Carmick's prior disciplinary offense, (2) his multiple violations of different RPCs in this case, and (3) his substantial experience in the practice of law. The only mitigating factor is a delay in the disciplinary proceedings.
Although we do not find the aggravating factors to be as extensive as the Disciplinary Board did, we view Carmick's misrepresentations to the superior court during the ex parte proceeding with the greatest disfavor. In simplest terms, Carmick misled the court when his duty of honesty was at its highest. Based on this misconduct, we find a 60-day suspension is consistent with the sanctions imposed on other attorneys for similar conduct and is not clearly excessive.

CONCLUSION
We hold Stephen T. Carmick violated the Rules of Professional Conduct by misrepresenting the circumstances of an ex parte order to the superior court and by directly contacting a party he should have known was represented by counsel. We reprimand Stephen T. Carmick and order him suspended from the practice of law for 60 days.
SMITH, SANDERS, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
*324 ALEXANDER, C.J. (concurring).
Although I agree with the majority that a 60-day suspension is an appropriate sanction here, I write separately to express my disagreement with the majority's holding that it is unnecessary for us to decide if Stephen Carmick's misrepresentations to Barbara McCracken regarding Eugene Butler and Nelson Hunt's schedule violated RPC 4.1(a) and RPC 8.4(c) because the misrepresentation was not "material." Majority at 320.
While certainly it was a violation of RPC 4.2 for Carmick to have communicated with McCracken on behalf of David Catron when he knew or should have know that McCracken was represented by counsel, the majority fails to recognize that Carmick's untrue statements to McCracken regarding the availability of her counsel were material in the sense that had Carmick not made the misrepresentations that are summarized in the Disciplinary Board's finding of fact 20, McCracken may well have contacted Butler and/or Hunt. Had she done so, one or both of them most likely would have rendered advice to McCracken that would have mitigated the harm that was caused to her by Carmick's improper communication.
Although I can accept the majority's determination that we need not decide whether Carmick violated RPC 4.1(a) by failing to advise her that $11,000 had been deposited into the registry of the court, I must say that Carmick's letter to McCracken of July 14, 1994, comes very close to being an affirmative misrepresentation if it is not one. In his letter he appears to suggest that McCracken would have difficulty collecting on her judgment and thus should compromise her claim. In light of the fact that $11,000 was already on deposit with the superior court, her ability to collect on her judgment would have to be viewed as quite good and a statement suggesting otherwise is, arguably, an affirmative misrepresentation.
The Washington State Bar Association, however, merely alleged that the misrepresentation was by omission. If a misrepresentation by omission constitutes a violation of RPC 4.1(a), it is, as the majority observes, adequately dealt with as a violation of RPC 4.2.
MADSEN, J., concurs.
NOTES
[1] Barbara McCracken's name was changed during the course of this matter. For consistency, she will be referred to in this opinion by the name the URESA petition was filed under.
[2] Conclusion of law 1 incorrectly references RPC 3.3(f). The Disciplinary Board denied WSBA's request to correct this error because the request was made more than six months after Carmick's appeal was filed and the parties had submitted briefing to this court. Because we do not approve this conclusion of law, we do not decide whether the error was appropriate for correction at this stage in the proceedings.
[3] We note this is also a violation of the oath of attorney prohibiting an attorney from seeking to mislead a judge by any artifice or false statement. APR 5(d)(5).
[4] The language of RPC 3.3(f) refers to a "tribunal" because it is a more inclusive term. Our use of the term "judge" does not indicate a more restrictive application than the rule would.