72 P.3d 173 (2003)
149 Wash.2d 707
In the Matter of the DISCIPLINARY PROCEEDING AGAINST: Linda J. WHITT, Attorney at Law.
No. 21249-0.
Supreme Court of Washington, En Banc.
Argued January 23, 2003.
Decided July 10, 2003.
*175 Kurt M. Bulmer, Seattle, Thomas D. Overcast, Ogden Murphy Wallace PLLC, Wenatchee, for Respondent.
Linda Briggs Eide, Washington State Bar Association, Seattle, for Petitioner.
*174 FAIRHURST, J.
The Washington State Bar Association (hereinafter WSBA) charged Ms. Linda J. Whitt with three counts of misconduct. The most egregious count relates to making false representations and fabricating evidence during the disciplinary process. The hearing officer recommended disbarment. On review, a majority of the WSBA Disciplinary Board (hereinafter board) found mitigating factors and recommended the following disciplinary sanction: a two year suspension, a psychological evaluation prior to seeking readmission to the bar, and a two year probationary period with periodic checks on Ms. Whitt's law practice. The WSBA asks us to reject the board's recommendation and disbar Ms. Whitt. We agree that Ms. Whitt should be disbarred.

I. FACTS
In February 1997, Ms. Whitt filed a police misconduct action on behalf of her client. Between September 1997 and October 1998, her client made several requests that Ms. Whitt depose one of the named parties. Ms. Whitt did not respond. During the same time period, Ms. Whitt did not return many of her client's phone calls.
At a deposition in September 1997, Ms. Whitt's client identified a different perpetrator. In October 1998, opposing counsel filed a counterclaim alleging malicious prosecution based upon misidentification. In response to the counterclaim, Ms. Whitt negotiated a "walkaway deal" in which she agreed to dismiss her client's case with prejudice in return for dismissal of the counterclaim. Ms. Whitt did not inform her client of either the counterclaim or the "walkaway deal." In November 1998, without her client's knowledge or consent, the case was dismissed with prejudice.
Unaware of the dismissal, in February and April 1999, the client wrote to Ms. Whitt recommending discovery approaches and requesting a lawyer-client meeting. In early June 1999, Ms. Whitt contacted the client and apologized for her lack of communication. Ms. Whitt advised her client that she was retiring at the end of the year due to family health conditions and she could no longer represent him.
In late June 1999, the client wrote Ms. Whitt requesting a copy of his file, asking about the status of his case, and inquiring about any residual funds from her retainer fee. Six weeks later, the client, by letter, directed Ms. Whitt to send his file to another attorney. Instead, Ms. Whitt sent the file directly to the client.
Upon reviewing the file, the client learned his case had been dismissed with prejudice. He filed a grievance with the WSBA. The WSBA sent a grievance letter to Ms. Whitt calling for a response.
In her January 2000 response to the WSBA, Ms. Whitt denied she dismissed the case without her client's knowledge or consent and submitted four documents to support her contention. The first document, a *176 copy of her calendar dated October 19 through 25, 1998, showed a staff meeting to discuss her client's case at noon on October 21, 1998, and a meeting with her client scheduled for October 23, 1998. The second document, a copy of her notes from a staff meeting held on October 21, 1999,[1] weighed the pros and cons of the case. The third document, a note dated October 23, 1998, indicated that, although the client was not happy with the dismissal, he understood the reasons for it. The fourth document, a handwritten note dated October 30, 1998, showed that Ms. Whitt apologized for the dismissal and informed her client that he made a good choice.
By letter in June 2000, the WSBA informed Ms. Whitt that it believed she provided false information and fabricated documents. In July 2000, Ms. Whitt admitted to supplying false information and fabricated documents to mislead the WSBA. She also admitted the client misconduct.
In September 2000, the WSBA charged Ms. Whitt with three counts of misconduct. The first two counts alleged that Ms. Whitt failed to act diligently on her client's behalf in violation of RPC 1.3 and/or RPC 3.2, failed to keep her client adequately informed in violation of RPC 1.4, failed to abide by her client's directives in violation of RPC 1.2, and failed to be honest about the status of her client's case in violation of RPC 8.4(c). The third count alleged Ms. Whitt made false representations and submitted fabricated documents during the disciplinary process in violation of RPC 8.4(c), RPC 8.4(d) and RLD 2.8(b)(3).[2]
A hearing was held on November 6, 2001. With respect to counts I and II, the hearing officer found that, although Ms. Whitt's actions were not done with the intent to benefit her or any third party, nonetheless, she knowingly failed to pursue the matter with diligence, knowingly took action contrary to the expressed wishes of her client and knowingly deceived her client. The hearing officer also found that Ms. Whitt's actions caused injury or potential injury to her client. Under the American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) (hereinafter Standards), the hearing officer concluded that the resulting sanction was suspension for counts I and II. With respect to count III, the hearing officer found that Ms. Whitt knowingly supplied false information and fabricated documents to the WSBA for a personal benefit, namely, to avoid discipline for her misconduct. He further found that Ms. Whitt engaged in dishonest conduct with disregard of the serious or potentially serious injury to the public, the legal system and the integrity of the disciplinary process. Under the Standards, the hearing officer concluded that the resulting sanction was disbarment.
The hearing officer also found that Ms. Whitt failed to reimburse her client for the residual funds supplied for his defense and owed her client a refund of $339.75. Ms. Whitt had $339.75 of her client's funds that had not been used in the course of representation. At first, she said she had expended all funds. At the WSBA hearing, however, it became clear that $339.75 had not been expended.
The hearing officer found the following aggravating factors: (1) dishonest or selfish motive, (2) submission of false evidence, false statements and fabricated documents during the disciplinary process, and (3) indifference toward making restitution. The hearing officer next considered potential mitigating factors. Ms. Whitt presented testimony from a psychologist suggesting she appeared anxious and depressed about the potential loss of her career when she was first evaluated in July 2000. The hearing officer found this testimony did not support mitigation because the psychological evaluation occurred after the WSBA challenged Ms. Whitt when she supplied false information and fabricated documents.
Ms. Whitt also presented evidence that she had sought treatment by a licensed counselor *177 about the breakup of an 11 year relationship and the ongoing disciplinary proceedings against her. The hearing officer found this testimony did not support mitigation because the counseling began long after Ms. Whitt's misconduct occurred. The psychologist and counselor also testified that Ms. Whitt may have been distressed because she was embarrassed, guilty and discovered.
In addition, two character witnesses offered evidence of Ms. Whitt's good reputation and/or interim rehabilitation. But, the hearing officer concluded from the testimony that Ms. Whitt presented no substantial evidence to suggest that her problems were solved or will be solved by counseling, changes in her practice, or having an attorney mentor. He further opined that Ms. Whitt's conduct most likely resulted from "(1) a fundamental underlying character flaw or (2) a total failure to appreciate the nature of the litigation process and the Association's disciplinary process." Findings of Fact, Conclusions of Law and Hr'g Officer's Recommendation 14. The only mitigating factor considered by the hearing officer was Ms. Whitt's lack of a prior discipline history.
The hearing officer recommended disbarment.
Ms. Whitt appealed to the board. By a seven-to-six vote, the board modified the recommendation of the hearing officer to a recommendation that Ms. Whitt be suspended for two years followed by a psychological evaluation prior to seeking readmission, a two year probationary period and periodic monitoring of her law practice during the probationary period by a person assigned by the WSBA. The board amended four findings of fact. First, the board deleted the finding of "serious or potentially serious injury" relating to the false representations and fabricated documents. It also added the fact that Ms. Whitt admitted to her falsities after receiving a letter from the WSBA challenging her on the truthfulness of the information she provided. Second, the board added a finding that Ms. Whitt had personal and emotional problems at the time of her misconduct based on the following testimony.
Ms. Whitt's psychologist testified:
And I think she wanted to provide good representation, but I think one of the things that happened in the case is that the lines blurred between Ms. [sic] Swindler the client, Mr. Swindler and the accuser of her years ago in Seattle because it was a similar kind of case, and it was a case I think that she felt did not have sufficient merit. She did not know how to handle that, and I don't think she fully knew at that moment what it meant to her to have a case like this particular case that didn't have. She's had other cases that I think she believed didn't have sufficient merit, but they certainly did not end up like this. And so I'm left saying well, what's the reasonwhat's the reason that this particular case had this kind of outcome and produced behavior that isthat was highly unusual for Linda. It wasn't her usual way of operation. So, in my efforts to understand that, I was trying to understand who Mr. Swindler was for her, and I think he was more than just a client that she was defending. I think that he became this other person.
Disciplinary Board Order Regarding Hr'g Officer's Findings of Fact, Conclusions of Law and Recommendation at 3.
Ms. Whitt's counselor testified:
My understanding regarding the lie was that at the time of the event that it happened [sic], she was very depressed and she felt the walls hadshe described it as the walls had closed in on her and that history was repeating itself in relation to the Seattle incident.
Id. at 2. Third, the board credited Ms. Whitt with remorse because her psychologist and counselor testified she was very distressed by her actions. Finally, the board deleted the hearing officer's finding concerning the determination that Ms. Whitt's conduct resulted from a "fundamental underlying character flaw" or "a total failure to appreciate the nature of the litigation process" and the belief that Ms. Whitt's problems were not likely to be solved by past or future treatment.
The six dissenting board members supported the hearing officer's disbarment recommendation. They concluded that the facts *178 "easily support disbarment," disbarment was the presumptive sanction under the Standards std. 5.11,[3] and the hearing officer properly rejected Ms. Whitt's arguments for a sanction less than disbarment. Board Dissent at 1. The dissent also concluded that the hearing officer properly considered aggravating and mitigating factors when he recommended disbarment, and "the misconduct in this case showed serious and grievous disregard of the very heart of a lawyer's duty, fundamental to the privilege to hold a law license, to be honest and trustworthy." Id. at 6. The WSBA sought discretionary review pursuant to former RLD 7.3.

II. ISSUES
A. Whether, based on the evidence presented, the board improperly added mitigating factors?
B. Whether Ms. Whitt should be suspended or disbarred?

III. ANALYSIS
The Washington State Supreme Court has plenary authority for lawyer discipline. In re Disciplinary Proceeding Against Carmick, 146 Wash.2d 582, 593, 48 P.3d 311 (2002); former RLD 2.1. A hearing officer makes the initial determination of the findings of fact and conclusions of law in a disciplinary action. Carmick, 146 Wash.2d at 593, 48 P.3d 311. The disciplinary counsel has the burden of proving the act of misconduct by a clear preponderance of the evidence. Former RLD 4.11(b); In re Disciplinary Proceeding Against Allotta, 109 Wash.2d 787, 792, 748 P.2d 628 (1988). Once the misconduct is proved, the hearing officer determines the appropriate sanction by using the following factors to guide the analysis: (1) the duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's conduct, and (4) the existence of aggravating and mitigating factors. STANDARDS std. 3.0.
The attorney's mental state, from the most culpable to the least culpable, may be one of intent, knowledge, or negligence. STANDARDS std. 3.0 cmt. Injury can range from serious injury to little or no injury. STANDARDS, Definitions at 17. A reference to injury alone indicates a level of injury greater than little or no injury but less than serious injury. Id. To determine the final sanction, the hearing officer next considers any aggravating and mitigating factors. STANDARDS std. 3.0. The court looks to the presumptive sanction and adjusts the sanction upward or downward based on the aggravating and mitigating factors. STANDARDS std. 3.0.
On appeal, the board evaluates the hearing officer's findings of fact using the substantial evidence standard of review and evaluates questions of law and conclusions of law de novo. Former RLD 6.7(b).
This court defers to the hearing officer's findings of fact provided they are supported by a clear preponderance of the evidence. In re Disciplinary Proceedings Against Dann, 136 Wash.2d 67, 76, 960 P.2d 416 (1998). Questions of law and conclusions of law are reviewed de novo. In re Disciplinary Proceeding Against Halverson, 140 Wash.2d 475, 485, 998 P.2d 833 (2000). A hearing officer's findings are given considerable weight especially when they address credibility and veracity of the witnesses. Carmick, 146 Wash.2d at 593-94, 48 P.3d 311. The determination of the sanction is guided by the Standards. Dann, 136 Wash.2d at 77, 960 P.2d 416. A unanimous board decision will be upheld in the absence of a clear reason for departure. In re Disciplinary Proceeding Against Kuvara, 149 Wash.2d 237, 258-59, 66 P.3d 1057 (2003). A board recommendation that includes a dissent "`may well be more readily rejected.'" In re Disciplinary Proceeding Against Tasker, 141 Wash.2d 557, 570-71, 9 P.3d 822 (2000) (quoting In re Disciplinary Proceeding Against Noble, 100 Wash.2d 88, 96, 667 P.2d 608 (1983)). A party can also submit comparative cases for consideration if the party believes the sanction is disproportionate to those imposed in other cases involving *179 similar misconduct. Kuvara, 149 Wash.2d at 257-58, 66 P.3d 1057.
A. Presumptive Sanction of Counts I and II
The presumptive sanction is calculated by determining the ethical duties violated, the mental state involved with the violations, and the extent of harm resulting from the misconduct. STANDARDS std. 3.0. The parties do not dispute that the presumptive sanction for Ms. Whitt's improper handling of her client's case is suspension.
Violation of Ethical Duties: Ms. Whitt admitted violating four ethical duties: (1) failure to act with reasonable diligence and promptness in representation under RPC 1.3, (2) failure to keep the client reasonably informed and to promptly comply with reasonable requests for information under RPC 1.4, (3) failure to abide by the directives of the client under RPC 1.2(a), and (4) engaging in conduct involving dishonesty, fraud, deceit or misrepresentation under RPC 8.4(c).
Mental State: Ms. Whitt's mental state was at least one of knowledge throughout the course of her client's representation. Although Ms. Whitt's misconduct did not benefit her or a third party, she knowingly (1) failed to pursue her client's matter with diligence, (2) took action contrary to the expressed wishes of her client, and (3) deceived her client. She disengaged herself from her client throughout the course of representation. She failed to return phone calls, failed to provide the case status to her client, and failed to act in furtherance of her client's legal expectations. She also knowingly dismissed her client's case with prejudice without any notification to her client. She then misled her client into believing that his case was still pending. Ms. Whitt does not dispute she acted with the requisite knowledge that her actions were adverse to her client's expectations and wishes.
Level of Injury: The hearing officer correctly found that Ms. Whitt's conduct resulted in injury to her client. At the very least, Ms. Whitt's actions prevented her client from pursuing new counsel or seeking a second opinion. The misconduct does not rise to the level of serious or potentially serious injury because, as the hearing officer found, Ms. Whitt held the probably correct belief that no jury would award damages to her client and that there might be an award against her client on the counterclaim. Ms. Whitt's conduct, nonetheless, injured her client's potential legal remedies.
Resulting Presumptive Sanction: The presumptive sanction is suspension when an attorney (1) knowingly fails to perform services for a client causing injury or potential injury, (2) knowingly deceives his or her client causing injury or potential injury, or (3) knowingly engages in conduct that is a violation of a duty owed as a professional causing injury or potential injury. STANDARDS stds. 4.42(a), 4.62, 7.2. Ms. Whitt's conduct undisputedly satisfies the elements of each of these standards. The hearing officer properly determined Ms. Whitt's presumptive sanction as suspension.
B. Presumptive Sanction of Count III
Violation of Ethical Duties: Ms. Whitt admitted to violating three ethical duties: (1) engaging in dishonesty, fraud, deceit or misrepresentation under RPC 8.4(c); (2) engaging in conduct that is prejudicial to the administration of justice under RPC 8.4(d); and (3) failing to cooperate fully and promptly with the disciplinary process under RLD 2.8(b)(3).
Mental State: Ms. Whitt's mental state is one of intent, the highest of the culpable mental states. The hearing officer correctly indicated that Ms. Whitt intentionally falsified information during the disciplinary investigation for her personal benefit. She intended to deceive the disciplinary process by fabricating multiple false documents and making false representations during the investigation. She did this to avoid personal responsibility for her misconduct.
Level of Injury: This course of action caused serious or potentially serious injury to her client, the public and the legal system as a whole.
Resulting Presumptive Sanction: The presumptive sanction is disbarment when "a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional *180 with the intent to obtain a personal benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." STANDARDS std. 7.1. Ms. Whitt intended to deceive the disciplinary process in order to avoid disciplinary action and her actions caused serious or potentially serious injury to her client, the public and the legal system. Thus, the recommended presumptive sanction is disbarment.
C. Aggravating and Mitigating Factors
The hearing officer found the following aggravating factors: (1) dishonest or selfish motive, submissions of false evidence, false statements, or other deceptive practices during the disciplinary process; and (2) indifference toward making restitution. STANDARDS std. 9.22(b), (f), (j). He also found the absence of a prior disciplinary record a mitigating factor. The hearing officer did not specify which aggravating factors applied to which count or how he applied them. The first two aggravating factors appear related to count III. The third aggravating factor appears related to counts I and II. The mitigating factor appears related to all three counts. The submission of false evidence was part of the factual basis of count III. As such, it should not have been a separate aggravating factor. If count III had not been filed, however, then the submission of false evidence could be considered as an aggravating factor to counts I and II.
Falsifying information during an attorney discipline proceeding is one of the most egregious charges that can be leveled against an attorney. Allotta, 109 Wash.2d at 795, 748 P.2d 628. Ms. Whitt harmed her client by casting doubt on his claims, harmed the public by jeopardizing the reputation and perception of the legal system as a whole, and harmed the legal system by attempting to circumvent the disciplinary process to evade responsibility for her misconduct. As such, disbarment is justified for count III. Even if the misconduct was considered as an aggravating factor to counts I and II, it would still justify increasing the sanction from suspension to disbarment.
The board erred by minimizing this aggravating factor because Ms. Whitt admitted she lied and submitted fabricated documents, and her admissions lessened the subsequent WSBA investigatory burden. Ms. Whitt only admitted her wrongdoings a full month after the WSBA challenged her veracity in June 2000. The aggravating factor of providing falsified information during a disciplinary proceeding will not be mitigated because a wrongdoer makes an admission after being accused of deception. A holding to the contrary would encourage unscrupulous attorneys to defraud the disciplinary process and, if caught, only then admit their wrongdoings. Misrepresentations and fabrications during the disciplinary process reflect adversely on the lawyer's ability to practice law, the public perception of the legal system, and the judicial process as a whole. The foundation of the judicial system is truth and honesty. An attorney is expected to cooperate fully with the discipline process and should not be rewarded for "coming clean" after lying in the disciplinary proceedings. "[C]ooperating with the disciplinary proceedings is not a mitigating factor, even though lack of cooperation may be an aggravating factor." In re Disciplinary Proceeding Against Huddleston, 137 Wash.2d 560, 579, 974 P.2d 325 (1999). Ms. Whitt not only did not cooperate, she acted most egregiously by intentionally falsifying multiple documents and lying during the investigatory proceedings to avoid discipline. Either as count III or as an aggravating factor to counts I and II, Ms. Whitt's misconduct relating to her veracity weighs heavily in favor of disbarment.
The hearing officer and the board correctly found Ms. Whitt's lack of prior discipline a mitigating factor. This mitigating factor does not necessarily reduce the sanction; rather, the weight given to it is determined by the totality of the circumstances. See, e.g., In re Disciplinary Proceeding Against Vetter, 104 Wash.2d 779, 794, 711 P.2d 284 (1985) (determining that no prior discipline history was not sufficient to reduce a disbarment sanction where the attorney misappropriated client funds, violated court orders, made false representations, commingled client funds, and aided a client in misappropriating estate funds). Ms. Whitt *181 showed a pattern of misconduct over a period of approximately three years. Based upon the severity of the misconduct, and particularly her intentional false representations during the course of the disciplinary investigation, Ms. Whitt's lack of prior discipline is not sufficient to prevent disbarment.
The board also erred by adding remorse and personal and emotional problems as mitigating factors because these findings are not supported by a clear preponderance. In general, a hearing officer is in a better position than a reviewing court to assess the credibility of witness testimony. Dann, 136 Wash.2d at 77, 960 P.2d 416. The board added a mitigating factor of personal and emotional problems, relying on the testimony of Ms. Whitt's psychologist and counselor. But, a hearing officer is not bound by various explanations if he or she is not persuaded by them. Id. The testimony merely indicates that Ms. Whitt's representation of her client may have been adversely affected by an incident from her previous career where she was accused of police brutality. But, the counselor also testified that Ms. Whitt's motive in making the false representations to the WSBA "was her own self-preservation." After hearing the testimony, the hearing officer concluded Ms. Whitt did not suffer from a mental or emotional disorder at the time of her misconduct. He found that Ms. Whitt became anxious and depressed only after receiving the WSBA letter accusing her of the false representations. He did not conclude, nor does the testimony support, that emotional problems clearly existed when Ms. Whitt made false representations. The board erred in finding personal and emotional problems because its findings were not supported by a clear preponderance and the hearing officer was in a better position to evaluate the credibility of the witnesses.
Although Ms. Whitt's misconduct with her client by itself would only result in suspension, the aggravating factor of making false representations and fabricating evidence during the disciplinary proceeding weighs heavily in favor of disbarment (just as count III alone justifies disbarment). Since the only mitigating factor properly credited to Ms. Whitt is a lack of prior discipline, the weight of mitigation is not sufficient to avoid disbarment. A lack of prior discipline history by itself is not per se protection against disbarment. Vetter, 104 Wash.2d at 794, 711 P.2d 284. The egregious acts of Ms. Whitt's fabrications and false representations during the disciplinary proceeding weigh far too heavily in favor of disbarment.
D. Retained Noble Factors from Kuvara
The board's vote on the recommendation of suspension was seven-to-six; therefore, the board was not unanimous and the decision of a divided board is entitled to less deference. The parties have not challenged the proportionality of the sanction, which obviates the need to address the issue.

IV. CONCLUSION
The purpose of a lawyer discipline proceeding is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge properly their professional duties to clients, the public, the legal system, and the legal profession. Huddleston, 137 Wash.2d at 573, 974 P.2d 325; STANDARDS std. 1.1. Ms. Whitt's misconduct spanned a period of about three years, culminating when she provided false representations during the disciplinary proceeding. Ms. Whitt's lack of prior discipline is not sufficient to overcome the multiple, intentional false representations and fabricated documents she submitted to prevent personal responsibility for her misconduct. Her actions reflect adversely on her ability to practice law. We reject the board's recommended sanction. We adopt the recommended sanction of the hearing officer and the board minority and disbar Ms. Whitt from the practice of law.
ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, JJ., and COX, J.P.T., concur.
NOTES
[1] The 1999 date is suspect since the case was dismissed in 1998.
[2] As of October 1, 2002, the Rules for Lawyer Discipline (RLD) have been supplanted by the Rules for Enforcement of Lawyer Conduct (ELC). However, at the time of Ms. Whitt's misconduct, the RLDs were still in effect.
[3] Standards std. 5.11(b) provides, "Disbarment is generally appropriate when ... a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."