193 P.3d 1064 (2008)
In the Matter of the DISCIPLINARY PROCEEDING AGAINST Jeffrey G. POOLE (Bar No. 15578), an Attorney at Law.
No. 200,521-7.
Supreme Court of Washington, En Banc.
Argued May 29, 2008.
Decided October 9, 2008.
*1066 Richard Todd Okrent, Law Office of Okrent & Wogsland, Everett, WA, for Petitioner.
M. Craig Bray, Washington State Bar Association, Seattle, WA, for Respondent.
MADSEN, J.
¶ 1 The Washington State Bar Association (WSBA) Disciplinary Board recommends that attorney Jeffrey G. Poole be suspended for one year. We agree with the recommendation and impose a one-year suspension to be followed by a two-year probation.

FACTS
¶ 2 On January 13, 1986, Mr. Poole was admitted to practice law in this state. He has been the only principal in his firm since 1995.
¶ 3 The counts against Mr. Poole are related to earlier disciplinary proceedings against him. One prior disciplinary action (the Moore grievance proceeding) concerned Poole sending invoices to clients billing them at his current rates for work performed at a time when a lower rate was in effect. During the investigation of this practice, the WSBA's Office of Disciplinary Counsel (ODC) sent a letter on July 24, 2003, requesting that Poole provide all billing statements that included similar charges. Poole stated that he had reviewed his records to determine which clients he had worked for during the relevant time period and stated that he had personally reviewed the billing files of each of these clients. He produced a total of five statements in response to the request. However, the hearing officer in the present proceedings found that after the hearing in the Moore grievance matter, but before the hearing in this matter, the ODC discovered nearly 100 additional 2002 billing statements that contained charges for time over six months old. The hearing officer identified 29 specific bills that "at least" should have been produced in response to the July 24, 2003, request in the Moore grievance proceedings. Clerk's Papers (CP) (Finding of Fact 23) at 196.
¶ 4 Another prior disciplinary matter involved improper trust account procedures. In August 2003, Mr. Poole received a reprimand and probation for this misconduct, and the probation included audits. Although he was required to cooperate with the WSBA audits, Poole failed to cooperate. In addition, during the audits, the auditor discovered some billing statements that fell within the July 24, 2003, request in the Moore proceedings but were not produced. In addition, the audits led to questions about Poole's SO[1] account, specifically, about the facts that the SO ledger was overdrawn by $540 for several months and that a very large deposit had been very quickly distributed to Mr. Poole's firm in its entirety by three checks. The auditor explained that while this did not necessarily indicate improper handling of funds, it was unusual. She requested the SO billing file.
¶ 5 Mr. Poole replied that a deposit into the SO account had resolved a mathematical error that caused the account to be overdrawn and that client SO owed his firm a greater amount than the large deposit, and therefore the deposited amount was distributed *1067 to his firm for fees and costs owed. He refused to turn over the billing file as requested, however, despite the auditor's request and later repeated efforts by disciplinary counsel Christine Gray to obtain the file.
¶ 6 Thus, in 2004, another grievance was filed against Mr. Poole, involving Mr. Poole's refusal to turn over the SO billing file and the shortage in the SO trust account. Poole did not respond, nor did he respond to a 10-day letter under ELC 5.3(e) requiring a response. A noncooperation deposition, see ELC 5.3(f)(1), took place on September 15, 2004. At the deposition, Mr. Poole claimed he was not producing the file because the request for it was intrusive and overly burdensome. Instead, he produced eight SO billing statements.
¶ 7 Ms. Gray advised Mr. Poole's counsel of her intent that a petition for interim suspension be filed with this court based on noncooperation because Poole refused to produce the SO billing file.[2] A petition was filed, but Poole finally produced Volume 3 of the SO file before he was required to appear and show cause why the petition should not be granted and the WSBA withdrew the petition.
¶ 8 Ms. Gray found additional bills in the SO file that were responsive to the July 24, 2003, request in the Moore matter. She also found evidence of trust account violations. Although she requested additional information, Poole did not respond. Ms. Gray issued a subpoena duces tecum commanding Poole to appear and produce responsive documents at a deposition. The deposition was canceled in February 2005 after Poole produced responsive documents.
¶ 9 Poole was charged with the following counts:
COUNT 1
By knowingly and/or intentionally failing to provide a complete response to ODC's July 24, 2003 request for information in the 2003 grievance and/or ODC's requests for the SO billing file, Respondent violated RPC 8.4(c) and/or 8.4(d).
COUNT 2
By failing to provide a complete response to ODC's July 24, 2003 request for information in the 2003 grievance, Respondent violated RPC 8.4(l), by failing to comply with his duty to cooperate under ELC 5.3(e).
COUNT 3
During the course of his probation audit between April 2004 and June 2004, by failing to comply with the auditor's and ODC's requests for the SO billing file, Respondent violated RPC 8.4(l), by failing to comply with the terms of his probation (ELC 13.8).
COUNT 4
By failing to comply with ODC's request of July 6, 2004 for the SO billing file and/or ODC's demand by subpoena duces tecum dated August 25, 2004 for the SO billing file, Respondent violated RPC 8.4(l), by failing to comply with his duty to cooperate under ELC 5.3(e).
COUNT 5
By failing to provide timely responses to one or more of ODC's requests for information in the 2004 grievance, Respondent violated RPC 8.4(l), by failing to comply with his duty to cooperate under ELC 5.3(e).
CP (First Am. Formal Compl.) at 40-41.
¶ 10 Additional counts against Poole concerned his failure to maintain accurate accounts for his client SO and failure to keep *1068 all clients funds in trust (counts 6-8 and 10).[3]Id. at 41-43.
¶ 11 The hearing officer rejected Poole's claims that his failure to produce billing statements in response to the July 24, 2003, request in the Moore matter was merely inadvertent. The hearing officer reasoned that whether the failure was intentional or knowing was a close question but concluded that Poole "knowingly failed to provide bills that were responsive to the July Request." CP at 205 (Finding of Fact 58). As to the SO file, Poole claimed that he had a legitimate basis for refusing to produce the file, but the hearing officer found that Poole's objection was untimely and baseless. The hearing officer concluded that "Respondent knowingly declined to produce the SO billing file in response to the auditor's and ODC's reasonable request for it." Id. at 206 (Finding of Fact 60). The hearing examiner also found that Poole "knowingly ignored December 2004 and later requests for information" in the 2004 grievance until he was subpoenaed to appear at a deposition. Id. She found negligent violations as to counts 6-8.
¶ 12 The hearing officer found that Poole's failure to respond to the ODC and "his intransigence when he did respond, resulted in actual and potential harm to the disciplinary system as a whole," and "caused actual and potential harm to ODC in the form of increased effort and costs, and potential harm to ODC's preparation for particular proceedings such as the Moore Grievance." CP at 207 (Finding of Fact 65).
¶ 13 The hearing officer concluded that the WSBA proved counts 1-8 and 10 as charged and determined that the presumptive sanction is suspension. The hearing officer found six aggravators: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, a refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law.
¶ 14 As to mitigating factors, Mr. Poole suffers from bipolar disease, and at the hearing both parties called medical experts to testify. The WSBA's expert testified that mental disorders substantially contributed to the misconduct alleged but could not say that but for the mental disability his misconduct would not have occurred. The hearing examiner rejected Mr. Poole's argument that personal and emotional problems should be applied as a mitigating factor. The hearing officer recommended that Mr. Poole be suspended from practicing law for one year, with a two-year probationary period to follow the suspension.
¶ 15 The Disciplinary Board approved the hearing officer's findings, conclusions, and recommendation with two modifications. First, the Disciplinary Board deleted part of the analysis underlying application of the aggravator of dishonest and selfish motive. However, it did not modify the hearing examiner's remaining reasoning underlying application of this aggravator,[4] i.e., that the aggravator was proper based on the fact that Poole had described the efforts he had undertaken to find responsive bills and these efforts "likely would have resulted in his finding them." CP at 213 (para. 90 (emphasis omitted)). The hearing officer concluded that Poole "either misrepresented the extent of his efforts to find responsive bills, or he willfully failed in his duty to cooperate and to look for them." Id.
¶ 16 The Disciplinary Board also determined that the evidence in the record established *1069 the mitigator of personal or emotional problems, and it was not necessary that Mr. Poole's problems caused his misconduct for this to be a mitigator. However, the Disciplinary Board did not modify the recommended sanction, instead affirming by a 7-2 vote the recommendation of a one-year suspension and a two-year probation. One dissenter would have imposed a two-year suspension and the other would have disbarred Poole.

ANALYSIS
¶ 17 This court gives considerable weight to the hearing officer's findings of fact, including the hearing officer's evaluation of credibility and veracity of witnesses. In re Disciplinary Proceeding Against Burtch, 162 Wash.2d 873, 888, 175 P.3d 1070 (2008); In re Disciplinary Proceeding Against Marshall, 160 Wash.2d 317, 329-30, 157 P.3d 859 (2007). Unchallenged findings are treated as verities on appeal. Marshall, 160 Wash.2d at 330, 157 P.3d 859. Challenged findings will be upheld if they are supported by substantial evidence. Id.; In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 209, 125 P.3d 954 (2006). Because the WSBA must prove misconduct by a clear preponderance of the evidence, the hearing officer's ultimate conclusion that misconduct occurred should be upheld on review if it is supported by substantial evidence that the hearing examiner and Disciplinary Board could reasonably have found would meet this standard. Marshall, 160 Wash.2d at 330, 157 P.3d 859. Conclusions of law are reviewed de novo and generally will be upheld if they are supported by the findings of fact. Id.
¶ 18 The American Bar Association's Standards for Imposing Lawyer Sanctions (1991 & Supp. 1992) (Standards) governs lawyer sanctions in this state. We first evaluate whether the Disciplinary Board properly determined the presumptive sanction by considering the ethical duties violated, the lawyer's mental state, and the actual or potential injury to others. Marshall, 160 Wash.2d at 343, 157 P.3d 859; Standards std. 3.0(a)-(c). Then aggravating and mitigating circumstances are considered. Standards std. 3.0(d). The degree of unanimity of the Disciplinary Board members and the proportionality of the sanction to sanctions imposed in other cases are considered to decide whether a departure from the presumptive sanction is warranted. Marshall, 160 Wash.2d at 342, 157 P.3d 859. We are not bound by the Disciplinary Board's decision but will not lightly depart from its recommendation. Id. at 343, 157 P.3d 859. Unless a specific reason to reject the recommendation of a unanimous Disciplinary Board can be articulated, the recommendation is generally affirmed. Id.; Burtch, 162 Wash.2d at 888, 175 P.3d 1070. Less weight is given a recommendation from a divided Disciplinary Board. Id.
¶ 19 Poole challenges several findings of fact regarding his failure to respond to the July 24, 2003, request for billing statements. He contends that finding of fact 8, which says that the Moore proceedings "should have resulted in [Poole's] scouring his files for all such billing errors" regardless of ODC requests, is merely an opinion. CP at 193. But once the issue arose as to whether his 2002 billing statements might have contained overcharges to clients for work done in 2001 or earlier, Mr. Poole had an obligation to check his files for such possible overcharges.
¶ 20 Poole challenges the finding that the July 24, 2003, request letter "unambiguously sought 2002 bills that charged clients for work performed more than six months prior to the date of the bill." Id. (Finding of Fact 11). He says the letter is ambiguous. It is not, and we note that Mr. Poole never claimed he did not understand what was requested. Indeed, the statements that he did provide fit the request.
¶ 21 Next, Poole challenges several findings about billing statements that should have been produced but were not. However, the evidence includes numerous billing statements that Mr. Poole did not produce that were responsive to the July 24, 2003 request letter. The evidence also supports the determination that his own testimony about why he did not produce them was not credible.
¶ 22 In connection with his challenges to the findings, Mr. Poole contends that when proving facts through circumstantial evidence, *1070 the WSBA must disprove all reasonable alternative theories offered by the attorney, and he contends this did not occur here. He challenges conclusion of law 70, which rejects the premise that when an allegation of misconduct is supported only by circumstantial evidence, the WSBA must exclude or disprove alternative theories opposed by the attorney. Rather, the conclusion says, the WSBA "need only produce facts from which only one reasonable conclusion may be inferred," citing In re Disciplinary Proceeding Against Guarnero, 152 Wash.2d 51, 61, 93 P.3d 166 (2004). CP at 208. This is a correct statement of the law, however. Id. (citing In re Disciplinary Proceeding Against Allotta, 109 Wash.2d 787, 748 P.2d 628 (1988)).
¶ 23 Only if a lawyer offers another reasonable conclusion that can be drawn from the evidence can it be said that the WSBA did not meet its burden of proof in reliance on circumstantial evidence. Further, additional principles must be considered. In assessing the alternative explanations offered by the attorney, the hearing officer may make credibility determinations. This court gives particularly great weight to findings when credibility and veracity of witnesses are at issue. Burtch, 162 Wash.2d at 888, 175 P.3d 1070; In re Disciplinary Proceeding Against Longacre, 155 Wash.2d 723, 735, 122 P.3d 710 (2005). In addition, an attorney challenging factual findings must do more than merely argue his version of the facts. He or she must argue why the findings are not supported by the evidence and cite to the record in support of the argument. In re Disciplinary Proceeding Against Kronenberg, 155 Wash.2d 184, 191, 117 P.3d 1134 (2005). Finally, this court will ordinarily not disturb findings that are made upon conflicting evidence. Burtch, 162 Wash.2d at 895, 175 P.3d 1070. Applying all of these principles and considering all the evidence, we conclude that there is sufficient evidence to support the challenged findings.
¶ 24 Mr. Poole challenges finding of fact 9, which also concerns the failure to produce billing statements, on the ground that it contains what he calls "alternative" findings. Finding of fact 9 states that in order for Poole to contend in the hearing on the Moore grievance that he "had found and corrected his inadvertent mistakes, Respondent either found all bills with old time, or he failed or refused to look for them." CP at 193. Poole claims that these statements are inconsistent and the finding shows the WSBA failed to prove either "fact," and, therefore, the finding cannot support the conclusions of law and must be stricken. Poole similarly challenges several other findings as containing "inconsistent" "alternative" findings, i.e., findings of fact 31, 56, and 59.
¶ 25 But none of the challenged findings contain contradictory findings. Rather, the findings say that events occurred either one way or another, but either way, Poole failed to produce material he was required to produce. That is, regardless of which course of conduct Poole engaged in, he violated the Rules of Professional Conduct (RPC) because he failed to produce required material. None of the findings challenged as "alternative" findings contain conflicting findings, the facts as stated are correct and supported by the evidence, and there is no reason why the hearing officer had to determine which of the alternatives happened.
¶ 26 Mr. Poole also challenges a number of findings relating to his failure to produce the SO billing file. However, findings of fact 25 and 30, which concern his failure to timely object to production of the file, are supported by the evidence. In addition, letter and e-mail correspondence that he claims contained objections instead questioned the relevance of the file and the intrusiveness of viewing any or all of his files, but do not, under any fair reading, constitute objections to production.
¶ 27 Poole also complains about findings of fact 26 and 27, which address the relevance of the SO billing file to the audit. Poole claims that the record does not show why the entire billing file was "relevant to one small error"the $540 shortage. Opening Br. of Resp't Poole at 25. The record does show the relevance. Poole had been sanctioned in the trust accounts case for violations of the RPCs regarding handling of client's funds and his trust account. He was on probation with audits as a condition of the probation. *1071 During the first audit, the auditor discovered a shortage in the trust account related to client SO that continued for several months and also discovered that Poole had quickly paid his firm $125,172.85 from the trust after this amount was deposited from SO. She testified the latter events raised several red flags. By this time, Poole's credibility regarding his own files' contents and his ability to spot and correct errors in client accounts had been seriously damaged. Far more triggered the request for the entire billing file than just a small shortage as Poole contends. Further, the auditor could not have known what was in the SO billing file and reasonably sought to see if it bore out Poole's explanations, as finding of fact 26 states. There is sufficient evidence supporting finding of fact 26.[5]
¶ 28 Mr. Poole also complains about alleged violations of his due process and privacy rights. He contends that when he resisted producing the SO billing file, the WSBA filed a petition for interim suspension, knowing that another disciplinary matter was before this court (involving the Matson grievance[6]). He contends that although he tried to resolve the SO billing file issue before the Disciplinary Board, the WSBA was unwilling to do so and instead created a situation posing the maximum potential for harm to him, including the possibility of prejudice to him in the Matson case. He argues that heightened due process rights attach because of the constitutionally protected right to his professional license that is at stake.
¶ 29 We conclude Poole's due process rights were not violated. The WSBA made a reasonable request for the SO billing file and did not have to accept Poole's explanations of the two issues that caused the auditor to request the file. Contrary to his claims, he did not make any objections to producing the file until the noncooperation deposition in September 2004. At that time, the auditor had twice written to Poole requesting the file, disciplinary counsel Gray had sent two letters asking for the file, the WSBA had advised Poole it would open a new grievance if he did not produce the file by a date certain, and an e-mail exchange occurred with Poole's counsel where Gray again requested the file. The WSBA opened the new grievance and, among other things, renewed the request for the SO file. Poole did not respond to most of the requests. His objection was, as the hearing officer found, untimely by the time he did state an objection. Events do not support Poole's claim that the WSBA manipulated events to his greatest disadvantage.
¶ 30 In addition, ELC 7.2(a)(3) provides that when a lawyer fails without good cause to comply with a request under ELC 5.3(f), disciplinary counsel may petition the court for an order suspending the lawyer pending compliance with the request. ELC 5.3(f) provides that if a lawyer has not complied with a request for more than 30 days, disciplinary counsel may notify the lawyer that failure to comply within 10 days may result in the lawyer's deposition or subject the lawyer to interim suspension under ELC 7.2. The WSBA was authorized to follow the course it followed.
¶ 31 Finally, Poole had the opportunity to argue the due process issue in this court but did not take that opportunity, and he never moved to quash the WSBA's subpoena duces tecum that demanded production of the SO billing file.
¶ 32 Mr. Poole also contends that his right to privacy was invaded when the WSBA required him "to produce records in the hopes they could find some sort of ethics violation." Opening Br. of Resp't Poole at 35. He characterizes the WSBA's request for the SO billing file as a fishing expedition and claims he is being punished because he *1072 raised a good faith challenge to the scope of the WSBA's authority to demand files.
¶ 33 Poole cites no authority for the premise that he has a privacy interest in his client's billing files. Moreover, the WSBA is authorized to investigate any alleged or apparent misconduct by a lawyer, and this may include inspecting and copying a lawyer's files and business records. ELC 5.3(a), (e). The information must be relevant to the investigation. ELC 5.3(e). As the hearing officer found, the information sought was relevant to matters properly being investigated at the time the WSBA sought the SO billing file. Further, Mr. Poole was under probation at the time, and this put an increased obligation of cooperation on him, as the WSBA contends. Mr. Poole has not established a violation of his right to privacy.[7]
¶ 34 We next consider Poole's challenges to the findings regarding his mental state. Finding of fact 57 states that Poole's conduct in failing to produce the responsive bills was more than negligent, and the issue whether it was intentional or knowing was a close one. Finding of fact 58 says that Poole "knowingly failed to provide bills that were responsive to the July Request. Specifically, he was aware of the nature or attendant circumstances of his failure to look for and/or produce responsive bills, and he did so without the conscious objective or purpose to accomplish a particular result."[8] CP at 205. Mr. Poole does not assign error to either of these findings and they are supported by the evidence.
¶ 35 Mr. Poole also does not challenge finding of fact 60, in which the hearing officer found that he knowingly declined to provide the SO billing file in response to the auditor's and ODC's reasonable requests for it. He does not challenge finding of fact 61, in which the hearing officer found Poole knowingly ignored the December 2004 and later requests for information in the 2004 grievance until February 2005, when he was subpoenaed to appear at a deposition.
¶ 36 We uphold the determination of Poole's mental state as "knowledge," both because he fails to challenge key findings on this issue and because, in any event, the findings are supported by the evidence. In connection with these findings, we have already upheld related findings that he does challenge as so-called "alternative" findings.
¶ 37 As to the ethical duties violated, the findings support the conclusions of law with respect to Poole's violations of the RPCs, including violations of RPC 8.4(c) and 8.4(l), as charged in counts 1 and 2, by failing to provide a complete response to the WSBA's July 24, 2003, request. RPC 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Mr. Poole misrepresented his search efforts and knowingly failed to provide responsive billings to the WSBA. RPC 8.4(l) provides that it is professional misconduct for a lawyer to "violate a duty or sanction imposed by or under the Rules for Enforcement of Lawyer Conduct in connection with a disciplinary matter," here, ELC 5.3(e).[9] Mr. *1073 Poole failed to comply with his duties under ELC 5.3(e) and thus violated RPC 8.4(l) when he did not promptly respond to the request for the responsive billings and resisted efforts to inspect the requested files.
¶ 38 The hearing officer also properly concluded that Poole violated RPC 8.4(d). RPC 8.4(d) provides that it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Conduct prejudicial to the administration of justice includes lawyer conduct in an official or advocatory role that physically interferes with enforcing the law, and clear violations of accepted practice norms. Longacre, 155 Wash.2d at 741-42, 122 P.3d 710. In In re Disciplinary Proceeding Against Whitney, 155 Wash.2d 451, 467, 120 P.3d 550 (2005), we held that this rule was also violated when an attorney testified falsely under oath at his WSBA deposition. We conclude that the administration of justice includes the licensing, monitoring, and disciplining of lawyers, and therefore we agree that this violation occurred.
¶ 39 The hearing officer's conclusions that the WSBA proved counts 3, 4, and 5 are also supported by the findings. As to count 3, the hearing officer correctly concluded that by knowingly failing to comply with the auditor's and ODC's request for the SO billing file, Mr. Poole violated RPC 8.4(l) by failing to comply with the terms of his probation as required under ELC 13.8.[10] As to count 4, the hearing officer correctly concluded that by knowingly failing to comply with ODC's request of July 6, 2004, for the SO billing file and ODC's demand by subpoena duces tecum for this file, Poole violated RPC 8.4(l) by failing to cooperate as required under ELC 5.3(e). Finally, as to count 5, the hearing officer correctly concluded that by failing to provide timely responses in the investigation of the 2004 grievance, Poole violated RPC 8.4(l) because he did not comply with his duty to cooperate under ELC 5.3(e).[11]
¶ 40 Next, we must consider the actual or potential injury to others. Mr. Poole complains about finding of fact 65, which states that his failure to respond to the WSBA and his intransigence when he did respond
resulted in actual and potential harm to the disciplinary system as a whole, which depends upon lawyers' cooperation and honesty to function. It also caused actual and potential harm to ODC in the form of increased effort and costs, and potential harm to ODC's preparation for particular proceedings such as the Moore Grievance.
CP at 207.
¶ 41 Poole contends that no potential harm to the ODC's preparation of the Moore case occurred because all the billing errors stemmed from the single decision to bill for "old time" and there is no reason to think that the outcome in that case would have been different if more mistakes of the same kind were shown. But it simply cannot be known whether the hearing office would have reached the same conclusion as Poole contends. With regard to production of the SO billing file, Poole contends that there can be no harm resulting from his conduct, which he characterizes as the assertion of the "right to reasonably question and defend." Opening Br. of Resp't Poole at 41. Although Mr. Poole was entitled to assert his right to defend himself, he was never prevented from asserting any defense to which he had a right. Further, he was not entitled to ignore or avoid the WSBA's requests for production of information that it could reasonably request. Also, he had the opportunity to argue the matter of producing that file in a show cause hearing before this court on the petition for interim suspension. He chose to produce Volume 3 of the file instead.
¶ 42 We uphold the determination of actual and potential harm to the disciplinary system *1074 as a whole and actual and potential harm to ODC.
¶ 43 In light of the ethical duties violated, Poole's mental state, and the actual or potential injury to others, the hearing officer properly applied Standards stds. 6.12 and 7.2 to Mr. Poole's failures to cooperate. Standards std. 6.12 provides:
Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
Standards std. 7.2 provides:
Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.
Suspension is the proper presumptive sanction.
¶ 44 The hearing officer found no mitigating factors and six aggravating factors. A mitigating factor will warrant a deviation from the presumptive sanction only if it is sufficiently compelling to justify a departure. In re Disciplinary Proceeding Against Anschell, 141 Wash.2d 593, 615, 9 P.3d 193 (2000). The hearing officer rejected Mr. Poole's claim that personal or emotional problems should be applied as a mitigator because there was insufficient evidence regarding the timing and extent of the problems to overcome documentary evidence showing he was capable of understanding what he was required to do and of acting accordingly.
¶ 45 The Disciplinary Board disagreed, concluding that under Standards std. 9.32(c), this was a proper mitigator. The Disciplinary Board relied on evidence that Poole suffered from bipolar disorder and anxiety disorder, unspecified, and that these mental disorders substantially contributed to the misconduct. The Disciplinary Board said that it is not necessary that Mr. Poole's personal or emotional problems caused the misconduct under Standards std. 9.32(c).
¶ 46 The WSBA maintains that the Disciplinary Board erred in considering personal or emotional problems as a mitigator under Standards std. 9.32(c). Instead, the WSBA contends, Mr. Poole's bipolar disorder and anxiety disorder, unspecified, should have been treated as a claimed mitigator under Standards std. 9.32(i). Standards std. 9.32(i) provides that a mental disability is a mitigating factor if, among other things, it "caused the misconduct." Neither Mr. Poole's doctor nor the WSBA's expert testified the conditions caused the misconduct. A personal or emotional problems mitigator, on the other hand, only requires "a connection between the asserted problem and the misconduct." In re Disciplinary Proceeding Against Holcomb, 162 Wash.2d 563, 591, 173 P.3d 898 (2007). Because the WSBA's own expert, Dr. Jacobson, testified that the mental disorders substantially contributed to the misconduct alleged, a connection is shown.
¶ 47 Mr. Poole has not argued a mental disability mitigator, contrary to the WSBA's position, and we agree with the Disciplinary Board that his mental disorders constitute a personal and emotional problems mitigator. We note, however, that at the hearing Poole took the position that the mitigator did not apply to the SO file request, but instead affected his ability to respond to the request for all billings responsive to the July 24, 2003, request in the Moore proceedings, which overwhelmed him.
¶ 48 The weight accorded a mitigating factor is determined by the totality of the circumstances. In re Disciplinary Proceeding Against Whitt, 149 Wash.2d 707, 721, 72 P.3d 173 (2003) (citing In re Disciplinary Proceeding Against Vetter, 104 Wash.2d 779, 794, 711 P.2d 284 (1985)). Under the circumstances of this case, we give the personal and emotional problems mitigator little weight. First, even though the Disciplinary Board modified the conclusion regarding the claimed mitigator, paragraph 91, it did not alter the recommended sanction or otherwise indicate that the mitigator should be given much weight. Second, because Poole knowingly *1075 and deliberately withheld the SO billing file, and did so in the face of a reasonable request without making any objections prior to the noncooperation deposition, and because he expressly declined to argue the mitigator applied to production of the SO file (despite a contrary position before this court), we conclude that the mitigator does not apply to counts relating to the SO file. Third, as to the counts regarding failure to produce files responsive to the July 24, 2003, request, we compare the mitigator to the mental disability mitigator because, while the mental disability factor does not apply here, it is somewhat similar on these facts. The comparison leads us to conclude that the personal and emotional problems mitigator should be given little weight because Poole's personal and emotional problems merely impacted but did not cause the misconduct.
¶ 49 We turn now to aggravating factors. As explained, the Disciplinary Board struck part of paragraph 90, in which the hearing officer determined that Poole had a dishonest or selfish motive. The WSBA does not challenge this modification. The portion of the paragraph that was not struck and thus still remains as a recommended aggravator, states:
As set forth in paragraph 56, Respondent described in a letter and in a deposition efforts that he had undertaken to find responsive billings, which efforts likely would have resulted in his finding them. Respondent either misrepresented the extent of his efforts to find responsive bills, or he willfully failed in his duty to cooperate and to look for them.... False or unfounded statements in th[is] context[is] inherently dishonest.
Decision Papers (Disciplinary Bd. Order Modifying Hr'g. Officer's Dec.) at 60 n. 1 (emphasis omitted). As modified, the paragraph addresses only counts 1 and 2 and the failure to produce billing statements in response to the July 24, 2003, letter in the Moore matter.
¶ 50 Poole argues that dishonesty is an element of count 1 and therefore the dishonest or selfish motive aggravator cannot apply. He contends the same conduct cannot be relied on to charge a violation and to constitute the aggravator, relying on Whitt. In Whitt, submission of false evidence was part of the factual basis of a count against a lawyer and we held that submission of false evidence could not be considered as an aggravating factor with respect to that count. Whitt, 149 Wash.2d at 720, 72 P.3d 173.
¶ 51 But this case is unlike Whitt. Count 1 alleges a violation of RPC 8.4(c), engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. There is a distinction between using the fact of submitting false evidence as an aggravator and finding dishonest or selfish motive inherent in the facts supporting the violation. Moreover, the aggravators are not limited in application to only some of the RPCs, as Poole's argument would require. Poole's argument if accepted would mean the dishonest or selfish aggravator could never be used to determine sanctions for certain violations. We reject the argument.
¶ 52 Poole also argues the aggravator is improper because the conduct does not show a dishonest or selfish motive, as opposed to act. We disagree. It is simply unreasonable to conclude that Poole acted dishonestly or selfishly but did not act with the motive to do so under the circumstances here.
¶ 53 We next consider the aggravating factor of a pattern of misconduct. Mr. Poole characterizes the alleged failure to produce bills responding to the July 24, 2003, request and the initial failure to produce the SO file as "two" acts of misconduct that do not constitute a pattern. But as the WSBA contends, Poole repeatedly failed and refused to cooperate with the WSBA's requests for information and disclosure of billing records relating to numerous clients over a period of three years. The aggravator is proper.
¶ 54 Mr. Poole does not challenge the aggravators of multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law, and we agree that these aggravators are appropriate.
¶ 55 Given the presumptive sanction, the aggravating factors, and the little weight we accord the applicable mitigating factor under the circumstances here, the recommended sanction of one year's suspension and two years' probation is appropriate.
¶ 56 We find no basis to depart from the recommended sanction in the degree of unanimity *1076 among the Disciplinary Board members. The Disciplinary Board upheld the hearing officer's recommended sanction of one year's suspension followed by a two-year probation by a 7-2 vote. The two dissenters would have recommended a harsher sanction, with one favoring a two-year suspension and the other favoring disbarment. All the members thus believe that at least a one-year suspension is appropriate.
¶ 57 Finally, we consider the proportionality of the sanction. The lawyer bears the burden of showing the sanction is disproportionate. Marshall, 160 Wash.2d at 349, 157 P.3d 859. Proportionality is considered with respect to similar cases. Id. at 348, 157 P.3d 859. Mr. Poole contends that the recommended sanction is disproportionate to that imposed in other discipline cases, relying on several cases.
¶ 58 First is the case of Karen Unger (In re Unger, Pub. File No. 03# 00007 (WSBA Disciplinary Bd. Feb. 23, 2004)). But in this case there were fewer acts of noncooperation, no aggravators, and two mitigators, all of which distinguish the case. Next is the case of John Bell (In re Bell, Pub. No. 04# 00003 (WSBA Disciplinary Bd. Oct. 11, 2004)), where a key distinguishing circumstance is that Mr. Bell engaged in bad faith obstruction of the disciplinary proceeding. He failed to reply to a show cause order or appear for the hearing. Thus, although Bell's case is similar to Poole's, due to multiple instances of noncooperation, his conduct was more egregious. There were multiple aggravators and no mitigators. Poole's one-year suspension is proportionate to Bell's 18-month suspension.
¶ 59 In the case of James Pack (In re Pack, Pub. No. 04# 00034 (WSBA Disciplinary Bd. Dec. 15, 2004)), Pack also engaged in bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency, among other things. Pack's case does not indicate the sanction here is disproportionate. In the case of Mark Lehinger (In re Lehinger, Pub. No. 04# 00045 (WSBA Disciplinary Bd. May 16, 2005)), the presence of multiple mitigating factors distinguishes the case, yet Lehringer was still suspended for a year.
¶ 60 Next, in the case of Antonio Salazar (In re Salazar, Proceeding No. 02# 00022 (WSBA Disciplinary Bd. Mar. 21, 2003)), Mr. Salazar was suspended for 30 days for negligent failure to communicate, act with diligence, and account for fees. A key distinguishing fact is that unlike Salazar, Poole was found to have acted knowingly, and there are both a greater number of aggravators and a lesser number of mitigators in Poole's case. In the case of Albert Germano (In re Germano, Bar No. 08739 (WSBA Disciplinary Bd. July 23, 1996)), Mr. Germano was charged with only one count of noncooperation, unlike Poole, and there was no finding of dishonesty. There were mitigators as well as aggravators, and the prior discipline aggravator concerned only censures, unlike the prior suspension in Poole's case. In the case of Brenda Means (In re Means, Bar No. 26180 (WSBA Disciplinary Bd. 2001)), Ms. Means was admonished for delaying a refund of a client's unearned money and failing to comply with disciplinary counsel's requests for information about this grievance. There is no finding in Means' case about her state of mind and no indication of multiple aggravators as in Poole's case.
¶ 61 Lastly, in In re Disciplinary Proceeding Against DeRuiz, 152 Wash.2d 558, 562, 99 P.3d 881 (2004), Mr. DeRuiz neglected client cases, failed to communicate with clients, failed to refund unreasonable and unearned fees, and failed to cooperate with grievance investigations in two separate matters. Multiple aggravators were applied bad faith obstruction and submission of false evidence and false statements or deceptive practices during the disciplinary proceedings. For each matter, this court imposed a six-month sanction and then provided that the suspensions were to run consecutively.
¶ 62 While there are similarities, there are also dissimilarities. For example, Mr. Poole was already on probation when he failed to comply with the request from the auditor who was conducting the probation audits. Ultimately, however, both attorneys failed to cooperate with WSBA investigations and the sanctions imposed in DeRuiz's case and recommended in Poole's are the same. Mr. Poole contends, however, that DeRuiz directs that if a reasonable basis exists for raising a due process claim, it would provide a defense *1077 to charges of noncooperation. But Poole has no such defense.
¶ 63 After considering the cases on the issue of proportionality, we conclude there is no good reason to depart from the recommended sanction of one year's suspension and two years' probation.

CONCLUSION
¶ 64 We impose a one-year suspension as recommended by the hearing examiner and the Disciplinary Board, followed by a two-year probation. We add the probation condition recommended by the Disciplinary Board and direct that Poole is required to continue treatment for his bipolar disorder and is required to follow treatment recommendations during his probation.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON and DEBRA L. STEPHENS, JJ.
NOTES
[1] During the present disciplinary proceedings many of Poole's clients were identified by initials.
[2] The next day, Mr. Poole moved for a protective order from the WSBA Disciplinary Board. He asserted that the WSBA was requesting "overbroad and unreasonable access to Mr. Poole's files" and that he was seeking a limit on the scope of the request because it was an invasion of privacy, denial of due process, and an unreasonable search and seizure. The Disciplinary Board refused to consider this request, apparently because the issue of production of the SO file was before this court as a result of the petition for interim suspension, which was filed subsequent to the motion for a protective order. Ex. 105 at 7.
[3] The hearing officer found that the WSBA had not proven by a clear preponderance of the evidence two other counts against Poole: Count 9, alleged failure to timely pay audit costs as required by the terms of his disciplinary probation, and count 11, alleged failure to deposit an advance fee payment directly to his trust account on or about September 20, 2004 (improper processing of credit card payments). These counts were dismissed and the WSBA has not challenged dismissal.
[4] The analysis that was deleted from paragraph 90 stated (a) that either Poole's testimony that the SO billing file was at least three volumes and his description of them in detail were unfounded or false, or his sworn declaration one month later that he could not find volumes 1 and 2 was false, and (b) that "[f]alse or unfounded statements in these contexts are inherently dishonest." CP at 213 (emphasis omitted). The Disciplinary Board deleted this part of the analysis on the ground that Poole was not charged with falsely describing the SO billing file or falsely stating that volumes 1 and 2 could not be found.
[5] Although he assigns error to finding of fact 27, Mr. Poole does not explain why it is unsubstantiated, and we uphold this finding as well.
[6] In re Disciplinary Proceeding Against Poole, 156 Wash.2d 196, 125 P.3d 954 (2006). The Matson grievance at issue was filed against Poole in July 2002 and concerned Poole's backdating an invoice and, for eight months, failing to properly account to a client for a disbursement. In January 2006, we imposed a six-month suspension for this misconduct. Id. Certain documents produced at the hearing on the Matson grievance were also responsive to the July 24, 2003, request for billing statements in the Moore grievance proceedings.
[7] Mr. Poole makes passing reference to a right to be free from unreasonable searches, but he does not provide argument and authority in support of this claim.
[8] The Standards at 7 (definitions) defines "[k]nowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." "Negligence" is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." Id.
[9] ELC 5.3(e) provides:

Duty To Furnish Prompt Response. Any lawyer must promptly respond to any inquiry or request made under these rules for information relevant to grievances or matters under investigation. Upon inquiry or request, any lawyer must:
(1) furnish in writing, or orally if requested, a full and complete response to inquiries and questions;
(2) permit inspection and copying of the lawyer's business records, files, and accounts;
(3) furnish copies of requested records, files, and accounts;
(4) furnish written releases or authorizations if needed to obtain documents or information from third parties; and
(5) comply with discovery conducted under rule 5.5.
[10] ELC 13.8(b) provides:

Failure To Comply. Failure to comply with a condition of probation may be grounds for discipline and any sanction imposed must take into account the misconduct leading to the probation.
[11] Mr. Poole made a belated challenge to the conclusion that the WSBA proved count 10, arguing that count 10 falls with the invalidation of the "alternative" findings. Because we uphold those findings, we do not consider this contention.